UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SPECIALIZED MACHINERY
HAULING AND RIGGING, LLC,

    Plaintiff,

-v-

D&L TRANSPORT, LLC, et al.,

    Defendants.

Case No. 3:08-cv-445

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING KILPATRICK'S AND DRUM RECYCLERS' MOTION TO DISMISS (Doc. #8); OVERRULING SPECIALIZED HAULING'S MOTION FOR AN EVIDENTIARY HEARING (Doc. #11) AND GIVING SPECIALIZED HAULING THIRTY (30) DAYS FOLLOWING ENTRY OF THIS ORDER TO SHOW CAUSE AS TO WHY ITS COMPLAINT AGAINST D&L TRANSPORT SHOULD NOT BE DISMISSED**

---

This matter arises from the delivery of a recycler oven from Quebec, Canada to Fort Meade, Florida by Plaintiff Specialized Machinery Hauling and Rigging, LLC ("Specialized Hauling"). D&L Transport, LLC ('D&L"), Drum Recyclers, Inc. ("Drum Recyclers"), Robert Kilpatrick ("Kilpatrick") and John Does 1-99 are named as the Defendants. Defendants John Does 1-99 are the unknown owners, partners, agents and/or stakeholders of Drum Recyclers. (Compl. ¶ 5.)

Each of Specialized Hauling's claims is made against all Defendants. Count One of Specialized Hauling's Complaint is for breach of contract. Count Two is for negligence. Count Three is for conversion. Count Four is for fraud. Count Five is for punitive damages. Count Six is for negligent misrepresentation. Count Seven is for trespass to chattels and Count Eight is for civil conspiracy.

Specialized Hauling asserts that this Court has both federal question and diversity subject matter jurisdiction over its Complaint. With this the Court does not currently disagree, and no Party currently argues otherwise.

The docket does not indicate that D&L has been served. Further, D&L has not answered or otherwise pled.

Now before the Court is a Motion made by Drum Recyclers and Kilpatrick. Therein these two Defendants seek to have the Complaint against them dismissed pursuant to Fed. R. Civ. P. 12(b)(2) due to a lack of personal jurisdiction. In the alternative, Drum Recyclers and Kilpatrick seek to have the Complaint against them dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. As a third alternative, Drum Recyclers and Kilpatrick seek to have this action transferred to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Specialized Hauling opposes all three of these alternatives and seeks an evidentiary hearing should the Court determine that further evidentiary findings are needed.

Drum Recyclers' and Kilpatrick's Motion is now fully briefed and ripe for decision. The relevant factual allegations will first be set forth followed by an analysis of the Motion.

I. **RELEVANT FACTUAL ALLEGATIONS**

When there is no evidentiary hearing, as is the case here, the pleadings and affidavits are viewed in a light most favorable to the plaintiff. *Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. App'x. 425, 429 (6th Cir. 2006). In this case, Drum Recyclers and Kilpatrick have submitted affidavits in support of their motion. Specialized Hauling has not submitted affidavits and, therefore, relies upon its only pleading, its Complaint, as a source of jurisdictional factual allegations.

Specialized Hauling is a specialized motor transport freight and delivery service and is in the business of interstate hauling. (Compl. ¶ 11.) It is an Ohio Limited Liability Company with its principal place of business in West Carrollton, Ohio. (Id. ¶ 1.)

D&L is a transportation broker between interstate commercial carriers and customers that require transportation and freight. (Id. ¶ 12.) It is a Kansas Limited Liability Company with its principal place of business in Overland Park, Kansas. (Id. ¶ 2.)

Drum Recyclers is in the business of reconditioning drums for the citrus industry. (Declaration of Jerry Tucker ("Tucker Decl.") ¶ 2 Mar. 6, 2009.) It is a corporation organized under the laws of the State of Florida with its principal place of business in Fort Meade, Florida. (Tucker Decl. ¶ 1; Compl. ¶ 3.)

Kilpatrick is an individual and a resident of Florida. (Decl. of Robert Kilpatrick ("Kilpatrick Decl.") ¶ 1 Mar. 5, 2009; Compl. ¶ 4.) Kilpatrick is not and has not been an owner or employee of Drum Recyclers. (Kilpatrick Decl. ¶¶ 3, 5.) However, Kilpatrick's wife, Pam Kilpatrick, is a one-third owner of Drum Recyclers. (Id. ¶ 4.)

In 2008, Specialized Hauling entered into a Transportation Services Agreement ("TSA") with D&L. (Compl. Ex. A.) Pursuant to the TSA, D&L was the broker and Specialized Hauling the carrier. (Id.) Specialized Hauling agreed to provide transportation services for commodities that were tendered to it by D&L. (Id.) Specialized Hauling would be compensated by D&L for any loads brokered by D&L. (Id.)

Sometime in April of 2008, as a favor to his wife, Kilpatrick contacted D&L to arrange for the transportation of a large recycler oven from Montreal, Canada to Fort Meade, Florida. (Kilpatrick Decl. ¶ 6.) D&L could not transport the recycler oven because it was oversized and

overweight. (Id. ¶ 8.) The oversized recycler oven could only be hauled with a specialized thirteen-axle trailer. (Id. ¶ 19.)

D&L recommended and contacted Specialized Hauling to transport the recycler. (Id. ¶ 8.) As a result, on June 2, 2008, D&L offered a rate agreement to Specialized Hauling for delivering a 121,000 pound recycler oven from Quebec, Canada to Drum Recyclers at Fort Meade, Florida for $27,000. (Compl. ¶¶ 14, 15, Ex. B.) This Agreement called for D&L to pay $10,000 in advance to Specialized Hauling followed by $17,000 after completion of the delivery. ( Compl. Ex. B.) A representative of Specialized Hauling confirmed this rate agreement. (Id.)

On June 3, 2008, Specialized Hauling issued a Transportation Agreement calling for the delivery of a 130,000 pound recycler oven from Quebec, Canada to Fort Meade, Florida, for a total of $27,000 with a $9,000 deposit. (Compl. Ex. C.) This Transportation Agreement also indicates that the shipper agrees to pay $50 per day for the driver's hotel if permits are delayed.[1] (Id.) A copy of this rate agreement was faxed to Drum Recyclers offices in Florida, signed by Pamela Kilpatrick and returned. (Tucker Decl ¶ 13; Compl. Ex. C.)

Kilpatrick attests that he spoke with a representative of Specialized Hauling over the telephone to finalize arrangements for hauling the recycler oven. (Kilpatrick Decl. ¶ 10.) Kilpatrick also attests that no negotiations occurred during this telephone conversation and that he was simply informed of the rates and payment schedule for hauling the recycler oven from Canada to Florida. (Id.)

---

[1] The copy of the Specialized Hauling Transportation Agreement attached to the Complaint and the copy attached to Jerry Tucker's Declaration appear to be the same except the statement "P/U on 6/??/09, If permits are delayed shipper agrees to $50 a day for driver hotel" was either not included on or has been deleted from the version attached to Jerry Tucker's Declaration.

Drum Recyclers wired the $9,000 advance to Specialized Hauling on June 5, 2008. (Compl. ¶ 18; Tucker Decl. ¶ 13.).) From this, D& L deducted and received a $1,000 fee. (Id. ¶ 18.) Drum Recyclers was to pay $18,000 in cash on the day of delivery. (Compl. ¶ 16.)

Specialized Hauling's driver with the thirteen-axle trailer arrived in Quebec on June 9, 2008, to pick up the recylcer oven. (Compl. ¶ 20.) Due to delays, the driver did not leave the pick-up site until June 12, 2008. (Id. ¶ 22.) Specialized Hauling made all of the arrangements for the hauling of this oversized load from an out-of-country pickup location into the United States and through several states to Florida. (Id. ¶ 28.) The recycler oven weighed 130,000 pounds. (Id. ¶ 25.)

The recycler oven arrived in Fort Meade on July 26, 2008. (Id. ¶ 29.) Upon arrival, Drum Recyclers did not accept delivery of the recycler oven because Kilpatrick was on vacation in another part of Florida. (Compl. ¶ 30; Tucker Decl. ¶ 15; Kilpatrick Decl. ¶ 13.)

On August 1, 2008, Drum Recyclers notified Specialized Hauling that the "owner" would return the morning of August 2, 2008, to pay the driver and thereafter take delivery of the recycler oven. (Compl. ¶ 33; Tucker Decl. ¶ 17; Kilpatrick Decl. ¶ 15.) Thus, Specialized Hauling's driver waited in Fort Meade for more than a week for Drum Recyclers to accept delivery. (Id. ¶ 32.)

Kilpatrick and Drum Recyclers asked Specialized Hauling's driver to park the thirteen-axle trailer with the recycling oven on Drum Recycler's property for safe keeping over the night of August 1, 2008. (Compl. ¶ 34.) Kilpatrick promised to pay the freight charges due to Specialized Hauling on August 2, 2008, and thereafter unload the recycler oven. (Id. ¶ 35.)

When Specialized Hauling's driver returned to Drum Recyclers on August 2, 2008, he

found that the recycling oven had been unloaded without his permission and the thirteen-axle trailer had been damaged. (Id. ¶¶ 36, 37, 38.) The Defendants have now refused to pay what Specialized Hauling says it is due resulting in the Complaint that is now before the Court. (Id. ¶ 40.)

Following are additional factual allegations taken from the Declarations submitted with Drum Recyclers' and Kilpatrick's Motion. Drum Recyclers is addressed first followed by Kilpatrick.

Drum Recyclers is not registered to do business in Ohio and does not derive any revenue from Ohio. (Tucker Decl. ¶ 3.) It has not employed any individuals in Ohio and has not maintained any offices, bank accounts, or telephone numbers in Ohio. (Id. ¶ 4.) No employee or agent of Drum Recyclers has ever visited Ohio on behalf of Drum Recyclers nor does Drum Recyclers have any interest in any property in Ohio. (Id. ¶¶ 5, 6.) Finally, no employee of Drum Recyclers had any contact with Specialized Hauling until delivery of the recycler oven in Fort Meade. (Id. ¶ 14.)

Kilpatrick attests that he has never visited Ohio on behalf of Drum Recyclers or in regard to the transportation of the recycler oven from Canada to Florida. (Kilpatrick Decl. ¶ 19.) Further, he has no property, bank accounts or any other presence in Ohio. (Id. ¶ 21.) Finally, Kilpatrick attests that during each telephone contact that he had with Specialized Hauling, he was in Florida and he does not recall knowing where Specialized Hauling was located. (Id. ¶ 16.)

## II. MOTION TO DISMISS

Kilpatrick and Drum Recyclers seek to have the Complaint against them dismissed

pursuant to Fed. R. Civ. P. 12(b)(2) due to lack of personal jurisdiction. The relevant legal provisions will first be set forth followed by an analysis of this branch of the Motion.

A.     **Relevant Legal Provisions**

When a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) is made, the Plaintiff, Specialized Hauling in this case, has the burden of proving that jurisdiction exists. *Burnshire*, 198 Fed. App'x at 429(citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996)). As a part of the burden of proof, the Plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss.

When an evidentiary hearing is held, the Plaintiff must establish jurisdiction by a preponderance of the evidence. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When there is no evidentiary hearing, as is the case here, the Plaintiff must make only a prima facie showing and the pleading and affidavits, when in conflict, are viewed in a light most favorable to the Plaintiff. *Burnshire*, 198 Fed. App'x at 429.[2]

The Sixth Circuit applies a two-part test to determine if personal jurisdiction exists. *Logan Farms v. HBH, Inc. DE*, 282 F. Supp. 2d 776, 795 (S.D. Ohio 2003). First, the federal court must determine if the law of the forum state, Ohio in this case, provides for personal jurisdiction. *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.*, Ltd., 91 F.3d

---

[2]Kilpatrick and Drum Recyclers argue that Specialized Hauling may not rest on its pleading but must respond "by affidavit or otherwise." However, the law is clear that Specialized Hauling need only make a prima facie case when the Court elects not to conduct a hearing and, in searching for the prima facie case, the Court may consider the Complaint. *See Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Therefore, if Specialized Hauling elects to not submit affidavits regarding personal jurisdiction, the Court may consider only its Complaint.

790, 793 (6th Cir. 1996). If so, the federal court must then determine if the personal jurisdiction comports with due process. *Id.*

The Sixth Circuit has explained that there are two kinds of personal jurisdiction that can be exercised, general jurisdiction and specific jurisdiction. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Youn*, 324 F.3d at 418. Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id.*

Ohio does not recognize general jurisdiction over non residents. *Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 WL 1726492 at *3 (S.D. Ohio June 13, 2007). In Ohio, jurisdictional analysis over non residents, such as Kilpatrick and Drum Recyclers in this case, is based only upon specific jurisdiction that may be available under Ohio law. *Id.*

Specific jurisdiction under Ohio law is provided by Ohio's long-arm statute, Ohio Rev. Code § 2307.382. Ohio's long-arm statute enumerates nine (9) categories of conduct that subject an entity to personal jurisdiction in Ohio if a cause of action arises out of such conduct. *Shaker Construction Group, LLC v. Schilling*, No. 1:08cv278, 2008 WL 4346777 at *2 (S.D. Ohio Sept. 18, 2008). Ohio's long-arm statute, Ohio. Rev. Code § 2307.382, provides as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

(8) Having an interest in, using or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

In this case, Specialized Hauling claims specific personal jurisdiction exists under sections 2307.382(A)(1) and (A)(6). Each will be addressed seriatim.

1. **Section 2307.382(a)(1)**

Section (A)(1) provides for personal jurisdiction as to a cause of action arising from the

defendant or the defendant's agent transacting any business in Ohio. The Supreme Court of Ohio has indicated that Section (A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Genesis Insurance Co. v. Alfi*, 425 F. Supp. 2d 876, 894 (S.D. Ohio 2006) (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477 (Ohio 1990), *cert. denied*, 499 U.S. 975 (1991)). The Ohio Supreme Court has also indicated that the word "transact" means "to carry on business," and "to have dealings," and it is broader than the word "contract." *Kentucky Oaks*, 559 N.E.2d at 480. Further, when analyzing Section (A)(1), the court has no better guideline than the wording of Section (A)(1) and must rely upon a case-by-case determination. *Genesis*, 425 F. Supp.2d at 894. However, the mere existence of a contract or the mere solicitation of business in Ohio is insufficient to confer jurisdiction under section (A)(1). *Burnshire*, 198 Fed. App'x at 431-32. There must be ongoing, substantive contacts. *Id.*

**a.**     **Factors To Be Considered**

Courts have considered two factors to help determine whether a non resident defendant "transacted business" within the meaning of Ohio's long-arm statute. *Shaker Construction*, 2008 WL 4346777 at * 3. The first factor is whether the non resident defendant initiated the business dealing. *Id.*(citing *Paglioni & Assoc., Inc. v. WinnerComm, Inc.*, No. 2:06-cv-276, 2007 WL 852055 at *9 (S.D. Ohio Mar. 16, 2007)). If the non resident reached out to the plaintiff in Ohio to create a business relationship, the non resident transacted business in Ohio. *Id.*

However, the question of who initiates the contact is but one factor to be considered and the determination is not always dependent upon who initiates the contact. *Military Supply, Inc. v. Reynosa Construction, Inc.*, No. 19326, 2000 WL 109783 at n.3 (Ohio Ct. App. Jan. 26, 2000).

The balance of the evidence must be considered to determine in which jurisdiction the parties undertook their discussions and communications and on what terms. *Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005). With regard to "reaching out," as a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state. *Benjamin v. KPMG Barbados*, No. 03AP-1276, 2005 Ohio App. LEXIS 1860 at *P48 (Ohio Ct. App. Apr. 28, 2005).

The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio. *Shaker Construction*, 2008 WL 4346777 at *3. If the parties negotiated in Ohio with provisions affecting Ohio, the non resident transacted business in Ohio. *Id.* However, merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting business." "Rather, there must additionally be some continuing obligation that connects the non resident defendant to the state or some terms of the agreement that affect the state." *Id.* (citing *Kentucky Oaks Mall*, 559 N.E.2d at 480).

**b.     Examples**

Courts have found personal jurisdiction pursuant to section (A)(1) in a variety of circumstances. For example, section (A)(1) provides jurisdiction over an out-of-state defendant who breached a surety agreement that he had negotiated with an individual who was an Ohio resident when the surety agreement was negotiated and executed. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998), *cert. denied*, 525 U.S. 810 (1998). Section (A)(1) provides jurisdiction over former officers and directors of a non-Ohio corporation that carried on business on a regular

basis with and attempted to obtain settlement and defense funds from an Ohio insurance company. *Genesis*, 425 F. Supp. 2d at 895. Section (A)(1) provides jurisdiction over a non resident who solicited business in Ohio and shipped goods to Ohio. *U.S. Sprint Communications Company Limited Partnership v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994). Section (A)(1) provides jurisdiction over out-of-state general partners, various general and limited partnerships and a CPA firm where the general partners regularly solicited Ohio residents to invest in limited partnerships, received funds from Ohio investors, regularly disseminated financial information to Ohio investors and conducted routine business in Ohio. *Goldstein v. Christiansen*, 638 N.E.2d 541, 544-45 (Ohio 1994). Section (A)(1) provides jurisdiction over a commercial non resident lessee where the lessee negotiated and, through the course of dealing, became obligated to make payments to its lessor in Ohio. *Kentucy Oaks Mall*, 559 N.E.2d at 480. Section (A)(1) provides jurisdiction over a foreign tobacco company whose American distributor provided an established distribution channel that included tobacco sales in Ohio. *State of Ohio ex rel. Attorney General v. Grand Tobacco*, No. 05AP-213, 2007 WL 275717 at *4-5 (Ohio Ct. App. Feb. 1, 2007). Section (A)(1) provides jurisdiction where a vehicle being sold to an Ohio resident was located in the non resident's state and the vehicle was picked up in the non resident's state but the negotiations and dealings were primarily in Ohio and the non resident defendant regularly conducted business in Ohio. *Muzzin v. Brooks*, 859 N.E.2d 584, 588 (Ohio Ct. App. 2006). Section (A)(1) provides jurisdiction where a non resident client of an Ohio insurance consultant initiated the contact with the Ohio consultant and paid the Ohio consultant at the Ohio consultant's office. *Ricker*, 828 N.E.2d at 209-210. Section (A)(1) provides jurisdiction over a non resident where the non resident initiated business dealings in Ohio,

communications took place between the Ohio resident and the non resident sent payments to the Ohio resident's office. *Ricker v. Bobcat of Orlando, Inc.*, No. 04AP-481, 2004 WL 2591244 at * 3 (Ohio Ct. App. Nov. 16, 2004). Finally, section (A)(1) provides jurisdiction over a non resident where the non resident corporation initiated discussions, negotiated a contract and, through the course of business dealings, became obligated to make payments to an Ohio corporation. *Hammill Manufacturing Co. v. Quality Rubber Products, Inc.*, 612 N.E.2d 472, 475 (Ohio Ct. App. 1992).

Courts have also found that personal jurisdiction pursuant to Section (A)(1) does not exist in a variety of circumstances. For example, Section (A)(1) does not provide jurisdiction where the non resident sold three products to an Ohio resident who solicited the sales, and the non resident did not solicit business in Ohio and did not own property in Ohio. *Buflod v. Von Wilhendorf*, LLC, No. CA2006-02-022, 2007 WL 210790 at * 3 (Ohio Ct. App. Jan. 29, 2007). Section (A)(1) does not provide jurisdiction where an off-shore defendant completed auditing services for off-shore affiliates of an Ohio insurance company, directed no correspondence to Ohio, had no contractual relations with persons in Ohio and had no operations in Ohio. *Benjamin,* 2005 Ohio App. LEXIS 1860 at *P48. Section (A)(1) does not provide jurisdiction where the non resident defendant did not initiate the negotiations, where there were no allegations that any negotiations or terms of the agreement affected Ohio and where the project that was the subject of the agreement was not located in Ohio. *Shaker Construction*, 2008 WL 4346777 at *3. Section (A)(1) does not provide jurisdiction where the record does not show which party initiated the business dealings, where there was no evidence to suggest that the discussions and negotiations between the parties occurred in Ohio and where the terms of the

alleged contract did not largely affect Ohio because payments to the plaintiff in Ohio was the only connection between the non resident and the Ohio plaintiff. *Paglioni,* 2007 WL 852055 at *9-10. Section (A)(1) does not provide jurisdiction over a contract dispute where an Ohio resident entered into the contract to move to Ohio based upon negotiations that occurred in a non resident state. *Joffe v. Cable Tech, Inc.*, 839 N.E.2d 67, 74 (Ohio Ct. App. 2005). Section (A)(1) does not provide jurisdiction where the plaintiff initiated the contacts, where the non resident was not based in Ohio and had no agents or real property in Ohio and where the work performed was not in Ohio even though there were continuing communications between the non resident and the plaintiff located in Ohio. *Military Supply*, 2000 WL 109783 at *3. Section (A)(1) does not provide personal jurisdiction where a non resident ordered goods from an Ohio resident by telephone and the goods where shipped to the non resident state. *Ohio State Tie & Timber, Inc. V. Paris Lumber Co.*, 456 N.E.2d 1309, 1313 (Ohio Ct. App. 1982), *overruled on other grounds by Kentucky Oaks Mall*, 559 N.E.2d 477 (Ohio 1990). Finally, section (A)(1) does not provide jurisdiction when machinery was manufactured in Ohio and shipped to the non resident, the purchase order for the machinery was signed and mailed in the non resident state and the transaction was initiated and completed by sales agents of the Ohio corporation in the non resident state. *NRM Corp. v. Pacific Plastic Pipe Co.*, 304 N.E.2d 248 at syllabus (Ohio Ct. App. 1973).

    In general, some or all of several factors were present when Section (A)(1) conferred jurisdiction. Among them are a distribution channel with sales in Ohio, a non resident who actively seeks sales in Ohio or initiates contacts in Ohio, goods shipped to Ohio, negotiations and dealings that took place primarily in Ohio and payment to an Ohio resident's address for

services rendered. Factors present when personal jurisdiction, pursuant to Section (A)(1), was not conferred include isolated transactions where the non resident did not regularly conduct business in Ohio, where a non resident had no contractual relations with Ohio residents, where the non resident did not initiate contacts in Ohio, where the non resident had no operations in Ohio, where the project that was the subject of the dispute was not located in Ohio, and where the terms of the agreement did not affect Ohio.

c.     **Analysis Regarding Personal Jurisdiction Pursuant To Section 2307.382(a)(1)**

In this case, neither Kilpatrick nor Drum Recyclers initiated contact with Specialized Hauling in Ohio. They contacted D&L in Kansas. D&L then contacted Specialized Hauling in Ohio to transport the recycler oven.

Specialized Hauling then faxed their Transportation Agreement to Drum Recyclers in Florida. Drum Recyclers signed the Transportation Agreement in Florida and returned it to Specialized Hauling. Drum Recyclers also electronically transmitted the $9,000 deposit from Florida to the account specified by Specialized Hauling.

Kilpatrick talked by telephone with Specialized Hauling representatives located in Ohio to make arrangements for delivery of the recycler oven. However, these discussions did not entail the negotiation of an agreement between Kilpatrick and Specialized Hauling.

Neither Kilpatrick nor Drum Recyclers have a distribution channel or actively seek sales in Ohio or have any other contacts with Ohio. Drum Recyclers ships no goods to Ohio. None of the events that caused the dispute occurred in Ohio.

The first factor is not satisfied. Neither Kilpatrick nor Drum Recyclers initiated the business dealing with Specialized Hauling in Ohio.

The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio. In this case, there are two interactions between Specialized Hauling and Kilpatrick and Drum Recyclers that could be viewed as negotiations or discussions. One is in regard to the Transportation Agreement that Specialized Hauling faxed to Drum Recyclers in Florida. However, since the price had presumably been set between D&L and Specialized Hauling, this could hardly be termed a negotiation. Further, Drum Recyclers signed this Transportation Agreement in Florida.

The second interaction that could be viewed as negotiations or discussions took place between Kilpatrick while he was in Florida and Specialized Hauling in Ohio.[3] However, the pleadings and evidence indicate that these discussions were not negotiations but involved arrangements for hauling the recycler oven.

Thus, neither Kilpatrick nor Drum Recyclers initiated the business dealing with Specialized Hauling involving shipment of the recycling oven and there were no negotiations in Ohio between Specialized Hauling and Kilpatrick and Drum Recyclers regarding shipment of the recycler oven.

Arguably, the terms of the Transportation Agreement between Specialized Hauling and Drum Recyclers affect Ohio because Specialized Hauling resides in Ohio. But, this is not enough. Neither Kilpatrick nor Drum Recyclers had any other contacts with Ohio. Thus, neither of the factors to be considered is satisfied. Neither Kilpatrick nor Drum Recyclers can be said to have transacted business in Ohio pursuant to section (A)(1).

---

[3]As a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state.

**2.     Section 2307.382(a)(6)**

Section (A)(6) provides for jurisdiction over a person for causing tortious injury in Ohio to any individual by an act outside of Ohio committed with the purpose of injuring individuals when the person might reasonably have expected that some individual would be injured thereby in Ohio. Those cases that discuss personal jurisdiction under section (A)(6) hold that the claim in question must be related to property located in Ohio. *Kvinta v. Kvinta*, No. 99AP-508, 2000 WL 197461 at * 7 (Ohio Ct. App. Feb. 22, 2000), *appeal not allowed*, 729 N.E.2d 1197 (Ohio 2000).

Courts have found the existence of personal jurisdiction under section (A)(6) in a variety of circumstances. For example, section (A)(6) provides jurisdiction over a prospective lender who allegedly made fraudulent communications regarding a contract to provide financing to an Ohio resident for an Ohio project. *Ashton Park Apartments, LTD v. Lebor*, 252 F. Supp.2d 539, 547 (N.D. Ohio 2003). Section (A)(6) provides jurisdiction over a non resident where the theft and conversion of a catalogue and customer list occurred upon the non resident's departure from Ohio and the contract at issue was executed in Ohio. *Innovative Digital Equipment, Inc. v. Quantum Technology, Inc.*, 597 F. Supp. 983, 987 (N.D. Ohio 1984). Section (A)(6) provides jurisdiction over a non resident where a tortious injury occurred in Ohio when the non resident wrongfully converted funds of Ohio resident, manipulated and controlled the accounts of an Ohio resident and provided limited funds for the Ohio resident's personal use while living in Ohio. *Toma v. Toma*, No. 82118, 2003 WL 21957022 at * 3 (Ohio Ct. App. Aug. 14, 2003), *appeal not allowed*, 800 N.E.2d 48 (Ohio 2003). Finally, section (A)(6) provides jurisdiction where a non resident allegedly committed conversion, fraud and civil conspiracy outside of Ohio knowing that the stock involved was of an Ohio corporation. *Herbruck v. LaJolla Capital*, No.

19586, 2000 WL 1420282 at * 3 (Ohio Ct. App. Sept. 27, 2000).

Courts have also found that personal jurisdiction, pursuant to section (A)(6), does not exist in a variety of circumstances. For example, Section (A)(6) does not provide jurisdiction where the physical damage occurs in the non resident state even though an Ohio resident is injured and continues to suffer in Ohio. *Jackson v. L&F Martin Landscape*, No. 1:07 CV 2670, 2008 WL 2390783 at * 2 (N.D. Ohio June 9, 2008). Section (A)(6) does not provide jurisdiction where the damage to property occurs in another state. *Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 WL 1726492 at *8 (S.D. Ohio June 13, 2007). Section (A)(6) does not provide jurisdiction over an out-of-state defendant for an alleged defamatory statement made out of state without showing more than minimum contacts in Ohio. *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1119 (6th Cir. 1994) (a tort action can be brought in the location where the injury is suffered), *cert. denied*, 513 U.S. 962 (1994). Section (A)(6) does not provide jurisdiction where an alleged tortious injury that occurred in Ohio was ancillary to the main issue - a determination of whether non resident had duty to support a child. *State ex rel. Stone v. Court of Common Pleas of Cuyahoga County, Juvenile Division*, 470 N.E.2d 899, 901 (Ohio 1984). Finally, section (A)(6) does not provide jurisdiction where the injury occurred in another state. *VanCamp v. VanCamp*, Nos. CA2001-03-058, CA2001-03-059, CA2001-03-060, 2002 WL 4472 at * 4-5 (Ohio Ct. App. Dec. 31, 2001).

In all of the examples, section (A)(6) conferred personal jurisdiction when the claim in question was related to property located in Ohio or the tortious injury was suffered in Ohio. In contrast, section (A)(6) did not confer jurisdiction when the claim in question was related to property not located in Ohio or the injury was not suffered in Ohio.

In this case, the injury occurred in Florida and not in Ohio. The thirteen-axle trailer was allegedly damaged at the Drum Recyclers facility in Florida. The contract was allegedly breached in Florida when Drum Recyclers failed to pay before the recycler oven was unloaded. Also, it was then and there that Drum Recyclers arguably failed to pay for any additional charges such as for overnight stays for the driver or for an overweight fee.

Although Specialized Hauling is a resident of Ohio and may be financially damaged, the damage to the thirteen-axle trailer occurred in Florida and that act that resulted in the alleged contract damages occurred in Florida. Therefore, Kilpatrick and Specialized Hauling are not subject to personal jurisdiction under section (A)(6).

## III. CONCLUSION

Specialized Hauling has not met its burden of making a prima facie case that Kilpatrick and Drum Recyclers are subject to personal jurisdiction under Ohio's long-arm statute. Since Kilpatrick and Drum Recyclers are not subject to personal jurisdiction under Ohio's long-arm statute, this Court need not and does not consider whether asserting personal jurisdiction over Kilpatrick and Drum Recyclers in an Ohio court would comport with the Due Process Clause of the U.S. Constitution.

Kilpatrick's and Drum Recyclers' Motion To Dismiss (doc. #8) is GRANTED. Specialized Hauling's Complaint against Kilpatrick and Drum Recyclers is DISMISSED. Further, without personal jurisdiction, the Court cannot and does not consider Kilpatrick's and Drum Recyclers' Motion To Dismiss for Improper Venue or Motion To Transfer.

Specialized Machinery has moved for an evidentiary hearing should the Court determine that further evidentiary findings are needed. However, this Court is not required to conduct an

evidentiary hearing when Specialized Machinery's pleadings are insufficient to make a prima facie showing. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 154(6th Cir. 1997).

Specialized Machinery did not submit supporting affidavits and its pleadings are insufficient to make a prima facie showing that Kilpatrick and Drum Recyclers are subject to personal jurisdiction in Ohio. Therefore, an evidentiary hearing will not be conducted and Specialized Machinery's Motion for an Evidentiary Hearing (doc. #11) is OVERRULED.

Specialized Machinery's Complaint was filed on December 5, 2008. Two of the three named Defendants have been dismissed for lack of personal jurisdiction. The docket indicates that D&L, the third and only remaining Defendant, has not been served.

Fed. R. Civ. P. 4(m) requires the Court to dismiss an action in which service is not made within 120 days of filing the Complaint. Specialized Machinery's time for filing proof of service or waiver regarding D&L expired April 5, 2009. Therefore, Specialized Machinery is given until not later than thirty (30) days following entry of this order to SHOW CAUSE as to why its Complaint against D&L should not be dismissed. Failure to show cause may result in dismissal.

**DONE** and **ORDERED** in Dayton, Ohio this Twentieth day of April, 2009.

**s/Thomas M. Rose**
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record